

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2002

# USA v. Dass

Precedential or Non-Precedential:

Docket No. 01-3099

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Dass" (2002). *2002 Decisions.* Paper 269.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/269

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-3099
_____

UNITED STATES OF AMERICA

v.

ANUPAM DASS,
                                        Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 00-cr-00339
District Judge:  The Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
April 9, 2002
_____

Before: McKEE, BARRY, and ALARCON, Circuit Judges

(Opinion Filed: April 11, 2002)
_____

OPINION
_____


BARRY, Circuit Judge
     Appellant Anupam Dass pled guilty to one charge of wire fraud in violation of 18
U.S.C.  1341.  He appeals from his sentence of 16 months imprisonment.  The District
Court had jurisdiction under 18 U.S.C.  3231; this Court has jurisdiction pursuant to 28
U.S.C.  1291 and 18 U.S.C.  3742(a).  We will affirm.

                                        I.
     Dass worked for a number of different Pennsylvania motels.  In December, 2000,
he was charged by information with using motel customers' credit card numbers to
purchase personal merchandise.  The information also alleged that he "double-billed"
customers.  The government alleged that when a customer reserved a room with a credit
card but subsequently paid in cash, Dass would pocket the cash and charge the room to
the credit card, then manipulate hotel records to cover his activity.  On January 12, 2001,
Dass waived indictment and pled guilty to the information.
     A sentencing hearing was held on July 20, 2001.  The District Court attributed a
loss amount of $17,576.69 to Dass, which resulted in a three-level increase in his offense
level, for a total offense level of 11.  U.S.S.G.  2F1.1(b)(1)(D) (2000).  That amount
represented the total of the merchandise purchased and the alleged double-billing.  Dass
accepted responsibility for a portion of this loss, but denied responsibility for, and
objected to, $10,767.07 of the loss attributable to double-billing customers at the Days
Inn in Mechanicsburg, Pa.  He argued at sentencing and argues on appeal that he should
not be charged with that loss, as the government had not proved the amount of double-
billing by a preponderance of the evidence.  Without that amount, the loss attributable to
him would be $6,809.62, making him eligible for only a two-level increase, for a total

offense level of 10. U.S.S.G. 2F1.1(b)(1)(C). The sentencing range would thus drop from 10-16 months to 8-14 months.

Dass's specific objection is to the reliability of the evidence showing the $10,767.07 double-billing loss. At sentencing, the government called Postal Inspector William Burmeister, the case agent. Burmeister testified that upon executing a search warrant for Dass's house and car, he recovered a number of credit card receipts, billing statements, deposit envelopes, and other material. These documents reflected Dass's double-billing scheme. He then showed the documents to the Days Inn general manager, Jim Baisch (i.e., Dass's former employer), who, according to Burmeister, agreed that they indicated double-billing. Burmeister then asked Baisch to calculate the loss the motel suffered as a result of Dass's conduct, and Baisch gave the figure of $10,767.07. Dass made full use of his opportunity to cross-examine Burmeister, questioning, for instance, the calculation of the $10,767.07 figure.

Burmeister also testified that Dass took two polygraph examinations regarding the double-billing and the "issue of loss." After an initial examiner found the results to be inconclusive, a senior examiner analyzed the data. That examiner determined that the first polygraph had been misscored and that Dass was deceptive in his answers regarding the double-billing. Although he had agreed in his plea agreement that the polygraph results would be admissible at sentencing, Dass cross-examined Burmeister, who had been present when the examinations were administered, concerning the procedure followed and Dass's purported fatigue at the time of the examinations.

II.

The rules of evidence generally do not apply at sentencing. Fed. R. Evid. 1101(d)(3). Similarly (subject to considerations as a result of Apprendi v. United States, 530 U.S. 466 (2000)), disputed sentencing factors need only be proved by a preponderance of the evidence. United States v. Evans, 155 F.3d 245, 253 (3d Cir. 1998); United States v. Kikumura, 918 F.2d 1084, 1098-102 (3d Cir. 1990).

Dass argues that the government failed to produce any evidence by means of live testimony or documents reflecting the calculations leading to Baisch's conclusion that the Days Inn loss was $10,767.07. But hearsay may be admitted during sentencing proceedings, and may be relied upon by a sentencing court, so long as it is reliable. United States v. McGlory, 968 F.2d 309, 347 (3d Cir. 1992) ("reliable hearsay is generally admissible"); United States v. Sciarrino, 884 F.2d 95, 97 (3d Cir. 1989) (rejecting assertion that District Court may not rely on hearsay evidence); U.S.S.G. 6A1.3(a), p.s. (hearsay admissible if it "has sufficient indicia of reliability to support its probable accuracy"). Admission of hearsay at sentencing is thus "subject only to the modest due process requirement that it bear 'some minimal indicium of reliability beyond mere allegation.'" Kikumura, 918 F.2d at 1100 (citation omitted).

The reliability of Baisch's hearsay statements was a decision for the District Court, and factual determinations based on such statements are deferred to unless clearly erroneous. McGlory, 968 F.2d at 347. Further, for purposes of determining loss, precision is not required. U.S.S.G. 2F1.1, comment. (n.9). Nevertheless, there should be some certainty about the evidence considered, especially where the loss calculation can have a real effect on setting the offense level.

At the sentencing hearing, Burmeister testified as to various statements that Baisch had made, including estimates as to the amount of loss Dass caused by double-billing. The District Court apparently relied on those statements, and it was entitled to do so. Further, the District Court was entitled to credit the polygraph results, as well as the fact that Burmeister computed the amount of loss, both of which could be considered corroboration of Baisch's calculations.

III.

We will affirm the judgment of the District Court.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge